WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

MICHAEL LACKEY and KALIN LACKEY,   )
husband and wife,   )
  )
               Plaintiffs,   )
  )
       vs.   )
  )
DISNEY VACATION DEVELOPMENT, INC., )
et al.,   )
  )      No. 2:13-cv-2074-HRH
             Defendants.   )
_____)

### O R D E R

### Motion for Summary Judgment

Defendants move for summary judgment.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

### Facts

Plaintiffs are Michael and Kalin Lackey. Defendants are Disney Vacation Development, Inc. and Disney Vacation Club Hawaii Management Company, LLC.

---

[1]Docket No. 67.

[2]Docket No. 74.

On October 15, 2011, plaintiffs flew from Arizona to Portland, Oregon, where they stayed overnight at the Ramada Airport Hotel. The next day, on October 16, 2011, plaintiffs flew to Honolulu, Hawaii. Upon arrival in Honolulu, plaintiffs checked in to the Aulani, a Disney Resort and Spa, which had opened on August 29, 2011.

Plaintiffs stayed at the Aulani until October 21, 2011. While there, plaintiffs changed rooms three different times because, as Mrs. Lackey explained, the Aulani "didn't have openings continually in one room, so we had to switch to whatever they had available to fit our schedule."[3] Each time plaintiffs switched rooms, they packed their own bags and handed them to the bellman for transfer to their new room.[4] Plaintiffs never saw a spider or any other bugs in any of the rooms in which they stayed.[5] During their visit, plaintiffs spent time off the Aulani property.

On the morning of their departure, Mr. Lackey noticed a small red mark on his right middle finger, which felt like it was tingling. Plaintiffs thought it looked like a bug bite. Plaintiffs did not mention the mark to any employee of the Aulani.

---

[3]Deposition of Kalin Lackey at 9:6-24, Exhibit 1, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[4]Plaintiffs contend that their bags were placed in an outdoor storage area during the transfers, but plaintiffs have provided no evidence to support this contention.

[5]In fact, plaintiffs do not recall seeing a spider anywhere on the Aulani property.

On October 21, 2011, plaintiffs stayed overnight in Portland, Oregon and then flew home to Phoenix on October 22, 2011.  Over the next two days, Mr. Lackey's finger began to swell and became redder.  On Monday, October 24, 2011, Mr. Lackey saw his primary care provider, Dr. Deb Grischo.  Mr. Lackey testified that Dr. Grischo told him that he had "some kind of a bite, it could be a possible infection.  She took a culture of it and put me on some antibiotics."[6]  The lab culture revealed that Mr. Lackey had a Staphylococcus aureus infection.

Over the course of the week, Mr. Lackey's finger worsened and on Friday, October 28, 2011, he went to the emergency room.  He was transferred to a different hospital, where Dr. Reece, a hand surgeon, performed surgery (radical debridement) to remove the infected tissue from Mr. Lackey's finger.  Due to an infection that developed, Dr. Reese performed a second "radical debridement of tissue that almost resulted in the loss of [Mr. Lackey's] right middle finger."[7]  Dr. Reece opined that Mr. Lackey's wound was "consistent with what I've seen from brown recluse spider bites."[8]  Dr. Reese also opined that Mr. Lackey's

---

[6]Deposition of Michael Lackey at 27:15-17, Exhibit 1, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[7]March 15, 2013 Letter from Dr. Reece to Sal J. Riveria at 1, Exhibit 2, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[8]Deposition of Edward M. Reece, M.D., at 17:20-22, Exhibit 9, Defendants' Amended Motion for Summary Judgment, Docket No. 67.  Plaintiffs now contend that Mr. Lackey was bitten by a brown violin spider (also called the Mediterranean recluse spider), rather
(continued...)

"Staph aureus infection ... was consistent with a spider bite as 90 percent of spider bites will have a Staph aureus type contamination in their jaws."[9]

On August 28, 2013, plaintiffs commenced this action in state court. The action was subsequently removed to this court on the basis of diversity jurisdiction. In their amended complaint, plaintiffs assert a claim of negligence-premises liability, and Mrs. Lackey asserts a loss of consortium claim. Plaintiffs allege that defendants owed them a duty to ensure that the areas they occupied at the Aulani were free of dangerous spiders.[10] Plaintiffs allege that defendants breached this duty of care by, among other things, failing to inform them of this dangerous condition, by failing to keep the premises free of dangerous spiders, and by failing to have an adequate pest control program.

---

[8](...continued)
than a brown recluse spider. Although neither of these spiders are native to Hawaii, the Mediterranean recluse spider is "present" in Hawaii. Deposition of Richard S. Vetter (defendants' spider expert) at 19:1-2, Exhibit 5, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74. Vetter testified that it is "safe to say that ... both of these spiders are medically important and I would not be surprised if the Mediterranean recluse was similar to the brown recluse in its venom capacity." Id. at 19:19-22.

[9]May 15, 2013 letter from Dr. Reece to Sal J. Riveria at 1, Exhibit 2, Plaintiffs' Response to Defendant's Amended Motion for Summary Judgment, Docket No. 74.

[10]First Amended Complaint at 4, ¶ 27, Docket No. 14.

The Aulani's pest control program includes quarterly treatment of guestrooms for pests, including spiders.[11]  Tanya Peak Smith, referred to by plaintiffs as defendants' internal pest control expert, acknowledged that this suggested that defendants "had an understanding that there could be venomous and nonvenomous spiders in guest rooms[.]"[12]  The guestrooms at the Aulani were treated on August 9 and August 23, 2011.[13]

The grounds of the Aulani are treated on a monthly basis for pests that may invade the indoors, including spiders.[14]  Peak Smith testified that she has "seen spiders on the Aulani property[.]"[15]  She testified that she saw "[g]arden spiders", which are spiders that "mostly live outside.  They build big elaborate webs, catch insects."[16]  Peak Smith testified that garden spiders are the only type of spider she has ever seen on the Aulani property and that unless "they were like on every single bush or something", no particular treatment

---

[11]Exhibit A to Ecolab Service Agreement, Exhibit 4 at DVD-LACKEY000044-45, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[12]Deposition of Tanya Peak Smith at 37:13-21, Exhibit 4, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[13]Ecolab Invoices, Exhibit 5, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[14]Exhibit A to Ecolab Service Agreement, Exhibit 4 at DVD-LACKEY000044-45, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[15]Peak Smith Deposition at 10:2-4, Exhibit 4, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[16]Id. at 10:5-9.

would be done.[17]  She testified that "one or two, which is all that I ever saw, you know, is not enough to do anything."[18]  Peak Smith also testified that she had "read some papers" about reports of the Mediterranean recluse spider being present in Hawaii but had "never seen one or heard a complaint of one[.]"[19]

Housekeepers at the Aulani are trained to look for and report any pest activity they might observe in a guestroom.[20]  Peak Smith was asked how one "inspects" for brown or Mediterranean recluse spiders and she replied that "I guess it's not something I think that you would do in areas where they're not, you know, common or not known, or if you didn't have a reason to inspect.  Usually someone would see something and that would cause you to look further."[21]  She also testified that the pest control training that was provided to housekeeping "was primarily bed bug training" and that housekeepers were not taught specifically about spiders.[22]  Peak Smith testified that spiders, including venomous spiders, can be brought into a room by a guest or might come in with the

---

[17]Id. at 10:13-14 & 26:9-16.

[18]Id. at 26:15-16.

[19]Id. at 16:1-8.

[20]Telephonic Deposition of Arlene Kalani at 15:23-16:9, Exhibit 6, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[21]Peak Smith Deposition at 26:23-27:5, Exhibit 4, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[22]Id. at 17:17-21.

furniture and that she had no idea if there was a "comprehensive inspection of the furniture in the guest rooms before the Aulani was opened to the public[.]"[23]   She also testified that it is possible that spiders could enter a room from the outside by using trees or shrubs that are next to the building.[24]   Defendants' retained expert agreed that it was "possible" that spiders could be brought into a guestroom via luggage or furniture.[25]

Guest complaints about pests are noted in the Aulani's maintenance database called "Maximo."[26]   There were no reports of a spider in a guestroom from August 29, 2011 through October 23, 2011.[27]

Defendants now move for summary judgment on plaintiffs' negligence claim.   If defendants are entitled to summary judgment on plaintiffs' negligence claim, then defendants are also entitled to summary judgment on Mrs. Lackey's loss of consortium claim because "a loss of consortium is a derivative claim" and "all elements of the underlying cause must be proven before the claim can exist."   Barnes v. Outlaw, 964 P.2d 484, 487 (Ariz. 1998).

---

[23]Id. at 40:3-13.

[24]Id. at 55:8-17.

[25]Deposition of Richard S. Vetter at 24:5-26:17, Exhibit 5, Plaintiffs' Response to Defendants' Amended Motion for Summary Judgment, Docket No. 74.

[26]Telephonic Deposition of Ken Poynter at 19:24-20:17, Exhibit 2, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

[27]Exhibit 7, Defendants' Amended Motion for Summary Judgment, Docket No. 67.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. <u>Id.</u> at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

In order to prevail on a negligence claim, a plaintiff must prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." <u>McMurtry v. Weatherford Hotel, Inc.</u>, 293 P.3d 520, 528 (Ariz. Ct. App. 2013). "Generally, a business owner 'is not [the] insurer of [guests'] safety and is not

required at his peril to keep the premises absolutely safe.'"  Id. (quoting Burke v. Ariz. Biltmore Hotel, Inc., 467 P.2d 781, 783 (Ariz. Ct. App. 1970)); see also, Preuss v. Sambo's of Ariz., Inc., 635 P.2d 1210, 1211 (Ariz. 1981)).   "However, 'a possessor of land is under an affirmative duty to use reasonable care to make the premises safe for use by invitees.'" McMurtry, 293 P.3d at 528 (quoting Markowitz v. Ariz. Parks Bd., 706 P.2d 364, 367 (Ariz. 1985)).  "The standard of reasonable care generally includes an obligation to discover and correct or warn of unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee." Id. "Generally, 'where reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for a jury to decide.'" Id. at 529 (quoting Markowitz, 706 P.2d at 369–70).  "To establish a proprietor's liability for injuries arising from a dangerous condition of the premises, an invitee must prove either that the dangerous condition was caused or permitted to develop by persons for whom the proprietor was responsible or that the proprietor had actual or constructive knowledge of its existence."  McDonald v. Smitty's Super Valu, Inc., 757 P.2d 120, 122 (Ariz. Ct. App. 1988).  see also, Andrews v. Fry's Food Stores of Ariz., 770 P.2d 397, 399 (Ariz. Ct. App. 1989) ("The plaintiff must prove that the proprietor created the dangerous condition resulting in the fall, or that the proprietor had actual or constructive notice of the dangerous condition.").

There is no dispute that defendants did not create the dangerous condition at issue here.  The dispute here focuses on whether defendant had actual or constructive notice of the dangerous condition at issue.

Plaintiffs argue that there are questions of fact as to whether defendants had actual notice of the presence of venomous spiders in the Aulani guestrooms.  Plaintiffs contend that the evidence shows that defendants knew there were brown recluse and Mediterranean recluse spiders in Hawaii and that defendants knew there were spiders on the Aulani property.  From these facts, plaintiffs argue that a reasonable jury could conclude that defendants knew that venomous spiders could be in the guestrooms and that defendants' response to this known danger was insufficient.

"The [actual] notice requirement ... is only satisfied if the proprietor has notice of the specific dangerous condition itself and not merely if the proprietor has general notice of conditions producing the dangerous condition."  Chiara v. Fry's Food Stores of Ariz., Inc., 733 P.2d 283, 285 (Ariz. 1987).  Peak Smith's testimony that she knew that Mediterranean recluse spiders were present in Hawaii and that she saw a couple nonvenomous spiders on the Aulani property at best suggests general notice.  The same is true of her testimony that because defendants had a pest control program, they understood that there could be spiders, either venomous or nonvenomous, in the guestrooms of the Aulani.  This testimony suggests general notice, but it does not suggest that defendants had actual notice

-10-

of the specific dangerous condition, namely the presence of venomous spiders in guestrooms at the Aulani.  Viewing Smith Peak's testimony in the light most favorable to plaintiffs, the court concludes that no reasonable jury could find that defendants had actual notice.

As for constructive notice, "[o]ne of the most important questions that must be answered ... is the <u>length</u> <u>of</u> <u>time</u> that a given [condition] has been present." <u>Walker v. Montgomery Ward & Co.</u>, 511 P.2d 699, 702 (Ariz. Ct. App. 1973).  Even assuming that there was a venomous spider in plaintiffs' room, plaintiffs have offered no evidence as to how long that spider was there.  Plaintiffs have also not offered any evidence that suggests that there was an extensive problem with venomous spiders at the Aulani, either in its guestrooms or on its grounds.  The only evidence of <u>any</u> spiders being on the Aulani property is Peak Smith's testimony that she saw a couple of garden spiders on the grounds.  That testimony is not sufficient to suggest that defendants had constructive notice of a venomous spider in plaintiffs' room.

This case is similar to <u>Rodgers v. La Quinta Motor Inn</u>, 873 S.W.2d 551 (Ark. 1994).  There, while Rodgers was a guest at the defendant's motel, she "felt pain in her lower leg. Rodgers was treated and later underwent surgery for her injury which she was told was probably due to a bite from a brown recluse spider.  No spider was ever found." <u>Id.</u> at 551.

The trial court granted the defendant's motion for summary judgment and the Arkansas Supreme Court affirmed.  The court explained that

> Rodgers failed to present evidence that La Quinta knew the brown recluse spider was prevalent in the area where the motor inn is located, and that La Quinta or its employees had ever seen a brown recluse spider on the premises.  Further, Rodgers failed to show that either she or La Quinta employees ever saw the spider that bit her. In addition, ... Rodgers was unable to show that the spider which bit her was in her motel room as the result of La Quinta's negligence or whether it was brought into the room by her.

Id. at 552.  Similarly here, plaintiffs have offered no evidence that venomous spiders were prevalent in the area where the Aulani was located; they have offered no evidence that any employee of defendants ever saw a venomous spider on the premises; and they have offered no evidence that anyone saw the spider that bit Mr. Lackey.

Plaintiffs suggest that defendants' knowledge that it was possible that venomous spiders could be in guestrooms somehow required defendants to properly inspect guestrooms for such spiders, which, plaintiffs contend, defendants failed to do.  See Piccola ex rel. Piccola v. Woodall, 921 P.2d 710, 714 (Ariz. Ct. App. 1996) (quoting Cummings v. Prater, 386 P.2d 27, 31 (Ariz. 1963)) ("Actual knowledge of the dangerous condition is not required. The duty to inspect arises when the landlord 'has reason to suspect' a defect.").  Plaintiffs' reliance on Piccola is, however,  misplaced because that case involved landlord-tenant liability, not premises liability.   In order for defendants to be liable under a

-12-

constructive notice theory of premises liability, plaintiffs must have some evidence that the dangerous condition at issue here, the presence of venomous spiders in the Aulani's guestrooms, existed for a sufficient length of time that defendants, in the exercise of reasonable care, should have known about it and taken appropriate action.  Plaintiffs have offered no such evidence.  In order to create a genuine issue of material fact as to constructive notice, plaintiffs had to offer some evidence that venomous spiders were a regular problem on the grounds of the Aulani or evidence that venomous spiders had previously been found in Aulani guestrooms.  There is no evidence that anyone has ever seen a venomous spider on the grounds or in the guestrooms of the Aulani and there is no evidence that venomous spiders were prevalent in the area.  There may be little doubt that Mr. Lackey was bitten by a venomous spider and there is no dispute that Peak Smith saw a couple of garden spiders on the Aulani grounds.  There is also no dispute that defendants had a general idea that there could possibly be spiders, both venomous and nonvenomous, at the Aulani.  But based on this evidence, no reasonable jury could conclude that defendants had constructive notice of the specific dangerous condition at issue here.

But even if defendants did not have actual or constructive notice of venomous spiders in the guestrooms at the Aulani, which they did not, plaintiffs argue that defendants are still not entitled to summary judgment because such notice is not required under the mode-of- operation rule.  "The 'mode-of-operation' rule looks to a business's

choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise." Chiara, 733 P.2d at 285. "A plaintiff's proof of a particular mode-of-operation simply substitutes for the traditional elements of a prima facie case—the existence of a dangerous condition and notice of a dangerous condition." Id.

Under the mode-of-operation rule, the question in this case would be whether defendants could have reasonably anticipated that venomous spiders would regularly be found in guestrooms at the Aulani. "Regularly" has been defined as "'[c]ustomary, usual, or normal'" for purposes of the mode-of-operation rule. Borota v. Univ. Med. Ctr., 861 P.2d 679, 681 (Ariz. Ct. App. 1993) (citation omitted). Plaintiffs appear to argue that Peak Smith's testimony that there were spiders on the Aulani property creates an issue of fact as to whether defendants could have reasonably anticipated that venomous spiders would regularly be found in the Aulani guestrooms.

This argument is unavailing. There is no evidence that suggests that defendants could have reasonably anticipated that venomous spiders would regularly be found in guestrooms. In order for the mode-of-operation rule to have any application here, there would have to be some evidence that employees or guests had regularly seen venomous spiders in the guestrooms or that venomous spiders could be found in large numbers in the

area around the Aulani.  Plaintiffs have offered no such evidence.  Without such evidence, the mode-of-operation rule does not apply.

<u>Conclusion</u>

Based on the foregoing, defendants' motion for summary judgment[28] is granted. The clerk of court shall enter judgment dismissing plaintiffs' first amended complaint with prejudice.

DATED at Anchorage, Alaska, this 1st day of April, 2015.

/s/ H. Russel Holland
United States District Judge

---

[28]Docket No. 67.